

## CONTRACTOR AGREEMENT

THIS CONTRACTOR AGREEMENT ("Agreement") dated _September 6_ 2005, but effective as of January 1, 2005, between Educational Data Systems, Inc. a Michigan corporation (herein called "EDSI"), with an address of 15300 Commerce Drive North, Suite 200, Dearborn, MI 48120, and Caring People Alliance, a Pennsylvania non-profit corporation (herein called "Contractor"), with an address of 1819 JFK Blvd., Suite 220, Philadelphia, PA 19103.

WHEREAS, EDSI is the recipient of certain grant funds from Philadelphia Work Force Development Corporation ("PWDC") to operate a program known as the Employment Advancement and Retention Center ("EARN" or the "Program"); and

WHEREAS, EDSI has subcontracted with Contractor to provide case management services and to lease space in connection with the Program;

NOW THEREFORE, in consideration of the mutual promises herein contained, EDSI and Contractor, intending to be legally bound, agree as follows:

1. SCOPE OF SERVICES

   During the Term (hereinafter defined), Contractor shall furnish to EDSI the services ("Services") set forth in the Scope of Services attached hereto as Exhibit "A" and made a part hereof. The Case Management Services described in Exhibit A are to be rendered by Contractor in accordance with the terms hereof and as an independent contractor and not as an employee of EDSI.

2. TERM OF AGREEMENT

   The term of this Agreement shall be from January 1, 2005 through and including June 30, 2006 (the "Term"). Compensation shall not exceed $1,680,509 during the period 01/01/05 to 06/30/06. The total of $1,680,509 represents the maximum compensation due to the Contractor under this Agreement in accordance with the budget attached hereto as Exhibit "B".

3. FISCAL MANAGEMENT.

   General Terms

   Adherence to the CS PLUS/TANF and Applicable Laws.
   EDSI and Contractor agree to implement this Agreement in accordance with the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) and federal, state and local laws, regulations, policies and procedures ("Applicable Laws"). Nothing in this Agreement will relieve the parties from adherence to the Applicable Laws. Any conflict or inconsistency between the Applicable Laws and this Agreement will be resolved in favor of the Applicable Laws.

<u>Fiscal Controls</u>

a. Maintenance of Fiscal Records In Accordance with GAAP.
   Contractor agrees to maintain its books and records in accordance with
   Generally Accepted Accounting Principles (GAAP) and to institute fiscal controls
   as to be able to satisfactorily account for all monies spent in order to perform its
   obligations under this Agreement.

b. Segregation of Contract Funds.
   Contractor shall keep program funds segregated from other funds belonging to
   Contractor's organization by maintaining separate ledgers.

c. Responsibility for Actions of Employees and Representatives.
   Employees and contractors of both EDSI and Contractor will provide services at
   Contractor's WPCC Premises (as described in Exhibit "A"). Each party shall be
   responsible for the actions of its respective representatives, employees,
   contractors and instructors with regard to all aspects of the Program, including,
   but not limited to, the certification and submission of time and attendance
   records, invoices, submission and verification of financial reports and
   maintenance of records.

d. Funds Limited to the Contract Program.
   Funds accrued or allocated to the Contractor under this Agreement or any
   amendment to this Agreement cannot be used by the Contractor to support other
   programs operated by the Contractor under a different agreement or
   amendment.

4. DEOBLIGATION

a. Agreement Contingent Upon EDSI's Receipt of Program Funds.
   Contractor agrees and understands that funds allocated to the Contractor under
   this Agreement or any amendment or modification hereto are contingent upon
   the Program funds being received by EDSI. EDSI, therefore, reserves unto itself
   the right to unilaterally deobligate, modify or amend Contractor's budget in
   proportion to EDSI's funding level, or if necessary, to suspend or terminate this
   Agreement or any amendment hereto immediately upon written or electronic
   notice to Contractor, as may be necessitated by EDSI's funding levels. If any
   such deobligation, modification or amendment shall be necessary due to EDSI's
   inability to receive adequate Program funding, then there shall be a
   commensurate reduction in the Program Services to be rendered by Contractor
   hereunder. Any deobligation, modification, or any Amendment thereto, shall be
   effective upon notification to the Contractor by EDSI.

   In such instances, costs will be reimbursed up to the date of cancellation only;
   thereafter neither EDSI nor Contractor shall have any obligations whatsoever to
   complete or otherwise continue the Program.

5. <u>METHOD OF PAYMENT</u>

    a. Invoicing.

Payment under this Agreement is intended to compensate Contractor for the expenses it incurs in maintaining the capacity to provide the Services. Reimbursement will be based upon the line item budget (the "Budget") provided by Contractor and included as Exhibit "B" hereto and made a part hereof. To receive payment, Contractor shall submit invoices to EDSI monthly. Invoices should be submitted by Contractor on or before the 10th day of the month. Invoices submitted after the allowable time frame will be honored at the sole discretion of EDSI, and if honored, a 10% reduction of the face value of the invoice can be applied. All invoices, including the final cumulative costs, for the period of the award must be received by EDSI no later than the 15th day of the following month. Payments shall be due to Contractor within twenty (20) days of Contractor's submission of its invoice to EDSI, provided that EDSI has received the necessary funding from PWDC.

For every invoice, the Contractor agrees to provide back-up information for all payroll expenses, equipment purchases and for any single item costing over $500.00. Back-up information may include copies of payroll registers, invoices, and timesheets. Contractor also agrees to provide a cumulative summary schedule that details all costs charged to this Agreement, including fringe benefit calculations and written documentation of allocation plan utilized, if applicable.

Invoices for reimbursable expenses shall contain the following statement signed by Contractor, or if this Agreement is with a firm, an officer or authorized representative of the firm:

    "I hereby certify, to the best of my knowledge and belief, that this invoice is correct, and that all items invoiced are based upon actual costs incurred or services rendered consistent with the terms of the contractor agreement."

Acceptance by EDSI of Contractor back-up information supplied at the time of invoicing does not relieve the Contractor from any audit findings that may arise.

Contractor's Obligation to Maintain Records.
Contractor must maintain the necessary books/records to document all costs incurred during the operation of this Agreement. At time of close out, the Contractor will be required to submit a summary of all expenses incurred. This close out report will be audited for compliance with TANF/CS PLUS cost classification and allocability. Contracts are not permitted to exceed the total amount budgeted for administrative expenses. If exceeded, EDSI will reduce a future payment to the Contractor to recover the excess.

    b. Cost Reimbursement Contracts.

Contractor understands that cost reimbursement contracts may only contain authorized expenses incurred during the period of the contract and only items budgeted for in the contract.

Contractor is responsible for maintaining adequate books/records to document costs charged to this Agreement.

c. Changes to the Budget.
Any changes to the Budget require the submission of a request for approval by the Contractor to EDSI and approval by EDSI, which shall not be unreasonably withheld or delayed.

d. Release of Claims Upon Final Payment.
The Contractor, upon final payment of amounts due under this Agreement, less any credits, refunds, or rebates due to EDSI, hereby releases and discharges EDSI from any financial claims arising from this Agreement.

6. PAYMENT ADJUSTMENTS/SUSPENSIONS

Reimbursement of Non-Budgeted and Unallowable Costs.
EDSI shall not reimburse or pay any expenditures, costs, or payments for services to Contractor pursuant to this Agreement which are found to be unallowable or which are found to be inconsistent with the latest approved Budget; provided, however, that said Budget may be revised for more efficient and effective use of monies available under the Agreement upon written request by the Contractor to EDSI and written approval thereof by EDSI in advance of the expenditure.

7. PROPERTY MANAGEMENT

a. Property Use Limited to the Program.
Property leased or purchased with EDSI funds, including personal or real property, shall only be used in implementing the EDSI program funded by this Agreement or any Amendment hereto. Title to the property shall vest with the Commonwealth of Pennsylvania and the property shall be returned to EDSI upon termination of this Agreement.

b. Contractor Procurement Requirements.
Contractor agrees to adhere to the following procurement procedures when obtaining any and all commodities and contractual services, including but not limited to, office supplies, training supplies, equipment, rental agreements, insurance, construction, maintenance, professional consultant services, and all other goods and services needed to carry out the terms of this Agreement.

For procurement with an aggregate cost of five hundred ($500) or more, Contractor shall secure three (3) written quotes, and shall purchase the item(s) based upon the lowest responsive quote received. Contractor shall submit such documentation when seeking reimbursement for this expenditure and shall maintain a record of the procurement and the receipt and payment of the good or service.

c. Requirements to Return Property.
Within thirty (30) days of the termination of this Agreement or any Amendment thereto under which the property was purchased, Contractor agrees to return to EDSI all property purchased with funds under this Agreement or any Amendment

thereto except where Contractor and EDSI agree that Contractor may continue to utilize such property for another activity. Any such agreement must be in writing and approved by EDSI.

## 8. PATENT AND DATA RIGHTS

All information and data, regardless of form, generated in the performance of, or delivered under, this Agreement, as well as any information provided to contractor by EDSI, shall be and remain the sole property of EDSI. Contractor shall keep all such information and data in confidence and not disclose or use it for any purpose other than in performing this Agreement, except with EDSI's prior written approval. In the event that the copyright in any data and information generated in the performance of this Agreement does not vest in EDSI by law, Contractor hereby agrees to assign and assigns to EDSI the copyright in all such data and information.

## 9. PUBLICITY

Neither EDSI nor Contractor shall, without the prior written consent of the other party, in any manner advertise or publish the fact that the parties hereto have entered into this Agreement.

## 10. ASSIGNMENT AND SUBCONTRACTING

Performance of any part of this Agreement may not be subcontracted nor assigned without the prior written consent of EDSI.

## 11. TERMINATION

This Agreement may be terminated at any time by either party with or without cause upon ten (10) days written notice to the other party. In the event of such termination, neither party shall have any further obligation to the other except to make any payments that may have become due under this Agreement and except with respect to those obligations that survive termination by the express terms of this Agreement.

## 12. ENFORCEMENT OF CONTRACT TERMS

The failure of either party to enforce strictly any of the provisions of this Agreement, or to require strict performance by the other party of any of the provision hereof, shall in no way be construed to be a waiver of such provisions or any other provision contained herein, nor shall it in any way affect the validity of this Agreement or any part hereof, or waive the right to enforce each and every provision herein. The parties are responsible for fulfilling all terms and conditions of this Agreement. While EDSI may monitor the Contractor's performance under the Agreement, the Contractor remains solely responsible for its performance. EDSI monitoring of the Agreement, shall not constitute a waiver or modification of any term or condition. Terms and conditions may only be modified by written amendment signed by both parties, subject, however, to changes in the Scope of Work pursuant to the provisions of Section 4(a), hereinabove.

13. <u>AUDIT</u>

All contracts are subject to audit. Contractor shall provide for the conduct of an external audit of the Program funded by this Agreement and any amendments hereto. The audit shall be conducted in accordance with and in compliance with Commonwealth of Pennsylvania requirements, and federal circulars A-102, A-128, A-122, and A-133 as applicable depending upon Contractor's organizational structure.

a. Audits of Commercial Organizations.
Commercial organizations receiving in excess of $50,000.00 a year, in the aggregate, of CS PLUS/TANF funds, whether from EDSI or other funding sources shall conduct a program specific independent financial and compliance audit in accordance with GAAP, or an organization wide financial and compliance audit that includes the CS PLUS/TANF funds received and the program conducted, within its scope.

b. Period for Performance.
Audits must be conducted, completed, and submitted within 180 days of the termination of this Agreement for program specific audits unless a different period of time is agreed to in writing by EDSI. Other audits shall be submitted within 30 days following the completion of the audit except that in all cases audits shall be submitted within a year of the termination of this Agreement. Failure to submit an audit as required shall result in the withholding of payments due Contractor under this Agreement or any other agreement at EDSI's discretion.

c. Identification of Program Income.
Audit Reports shall include a schedule identifying program income.

d. Disallowed and Questioned Costs.
Contractor shall be liable to EDSI for any disallowed or questioned costs Contractor or EDSI incur as a result of Contractor expending funds in violation of this agreement or in violation of the appropriate Federal, State or local statutes, regulations, rules, policies or procedures. Disallowed or questioned costs may be identified through a monitoring report, investigation, review or audit. Disallowed or questioned costs shall be refunded and promptly repaid to EDSI by Contractor within 30 days of the issuance of the applicable report in the event the costs cannot otherwise be resolved.

e. Audit Resolution Procedures.
Contractor agrees to be subject to audit resolution procedures established by EDSI, the Commonwealth of Pennsylvania or other governing body and to cooperate with EDSI in the event resolution cannot be achieved at EDSI's level. EDSI reserves the right to withhold an amount equal to any amount questioned during audit. These funds may be withheld from this Agreement or any future contract with EDSI. The funds will be disbursed only upon successful resolution of the finding.

f. Deduction from Monies Due Contractor.

If this or any other agreement is in effect at the time of the identification of a disallowed cost, EDSI may deduct the amount disallowed from any reimbursement or payments due the Contractor.

g. Failure to Discover.
EDSI's failure to either promptly discover or demand prompt payment for questioned or disallowed costs will not relieve Contractor from its obligation to repay the disallowed or questioned cost at the time of identification on demand.

h. Stand In Costs.
Contractor may with the written approval of EDSI and PWDC, substitute allowable program applicable uncharged costs or in kind contributions made from non federal sources to support the Program funded by this Agreement, to stand in for a disallowed or questioned cost only to the extent such contribution or in kind payment has been proposed and identified in Contractor's Budget attached to this Agreement and such expenditure is documented and supported by the Contractor's independent audit report. The uncharged costs must have been incurred in the same title, cost category and funding period as the costs which they are proposed to replace.

i. Expiration of this Agreement.
The expiration of this Agreement shall not affect EDSI, the State's, or the DOL's right to audit, disallow or question a cost, nor Contractor's obligation to repay the cost.

j. EDSI or its designated agent reserves the right to perform program financial and compliance monitoring of the Contractor's financial and program books and records at EDSI's reasonable discretion and upon advance notice to Contractor. These monitoring visits will be limited in scope and are not intended to preclude the external audit of the program required and as stated above.

14. RECORDS

Contractor shall keep accurate records of the time spent in the performance of Services hereunder. EDSI shall, until the expiration of three (3) years after final payment under this Agreement, have access to and the right to examine any directly pertinent books, documents, papers and records to Contractor involving transactions related to this Agreement.

15. CHANGES

EDSI, within the general scope of this Agreement, may, at any time by written notice to Contractor, issue additional instructions or request additional services or the omission of services covered by this Agreement. In such event, there will be made an equitable adjustment in price and time of performance.

16. NOTICES

Any notice shall be considered as having been given (i) to EDSI if mailed by certified mail, postage prepaid to EDUCATIONAL DATA SYSTEMS, INC., 15300 Commerce

Drive North, Suite 200, Dearborn, Michigan 48120 (ii) to Contractor if mailed by certified mail, postage prepaid to 1819 JFK Blvd., Suite 220, Philadelphia, PA 19103.

## 17. COMPLIANCE WITH LAWS

Both parties shall comply with all applicable state, federal and local laws, and executive orders and regulations in the performance of this Agreement. Each party will notify the other immediately if it becomes the subject of an audit or investigation relating to this Agreement or if any of its agents, contractors or employees become indicted, suspended or debarred. The parties mutually represent that they have not been convicted of fraud or any other felony arising out of a contract with previous clients.

## 18. INSURANCE, INDEMNITY AND LIABILITY

Contractor shall carry Comprehensive General Liability Insurance and, if applicable, Worker's Compensation Insurance covering its employees, contractors and agents, and shall provide written proof upon request that EDSI is a loss payee under such insurance policies. The parties hereby indemnify and hold harmless the other from and against any and all claims, actions or demands against the indemnified party and any and all damages, liabilities or expenses, including counsel fees, arising out of the acts or omissions of the indemnifying party under this Agreement. The indemnification provisions of this section 18 shall survive termination of this Agreement.

## 19. CONFLICT OF INTEREST

Both parties hereto represent and covenant that neither they nor any of their employees or representatives has or shall have, directly or indirectly, any agreement or arrangement with any official, employee or representative of any customer or of any government or governmental agency or of any political party under which any such official, employee, representative or political party shall receive either directly or indirectly anything of value whether monetary or otherwise as the result of or in connection with any actual or contemplated sale of any product or service of either party or any of its subsidiaries to any customer, government or governmental agency or as the result of or in connection with any action or contemplated action taken or requested to be taken by any government or governmental agency of any nature relating to either party or any of its subsidiaries.

## 20. DISCLOSURE

Each party hereto shall have the right, in its discretion, to disclose the terms and conditions of this Agreement (as it may be amended from time to time), including without limitation, amounts paid pursuant hereto, to the agents of the client for which services are being provided.

## 21. <u>DISPUTES</u>

Any dispute arising under this Agreement that is not settled by Agreement of the parties may be settled by appropriate legal proceedings. Pending any decision, appeal or judgment in such proceedings or the settlement of any dispute arising under this Agreement, Contractor and EDSI shall proceed diligently with the performance of this Agreement, which performance shall include, without limitation, EDSI's payment to CPA for services rendered hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written.

CARING PEOPLE ALLIANCE          EDUCATIONAL DATA SYSTEMS, INC.

By _____       By _____
   Arlene F. Bell, Esq.              W. Robert Schnieders, President

Title___President and CEO_____

Employer Identification #_____23-1352104_____

CONTRACTOR AGREEMENT NO. ___05-05_____

DATE _September 6, 2005

**Exhibit "A"**
**Scope of Services**

The services to be performed by Contractor under the Agreement are described as follows (the services described in Sections A and B of this Exhibit "A" are referred to herein and in the remainder of the Agreement as the "Services"):

**A.     CASE MANAGEMENT SERVICES.** Contractor will provide case management services to TANF clients referred to the West Philadelphia EARN Center from the West District County Assistance Office or other relevant referral source in accordance with program guidelines as developed by the Philadelphia Workforce Development Corporation and implemented through contract with EDSI. The Services shall be provided on premises owned by Contractor, located at 3512 Haverford Avenue, Philadelphia, PA 19104, known as the West Philadelphia Community Center (the "WPCC Premises"). Contractor will also provide supervision and direction for case management services.

      1.     Case Management shall consist of:

          (a)     Professional social work services designed to assist clients in overcoming barriers to gaining, retaining or advancing in employment. Such services include:

      1.   clinical and work ready assessments;
      2.   preparing and updating participant work plans (EDRPs);
      3.   regular meetings with participants throughout all phases of the program;
      4.   confidential individual and/or group counseling sessions;
      5.   information and referral to needed program services through other providers or government programs;
      6.   Other services as required by PWDC or deemed appropriate by EDSI in order to assist participants in meeting their goals and in meeting EARN Center contract performance goals.

Case management services are provided by case managers with a relevant bachelor's degree including social work, psychology, sociology, education, or other relevant field.

          (b)     Supervision includes professional, trained, staff supervision and case consultation with a master's level, clinically prepared specialist. Supervisory personnel will assign cases, consult with staff, determine training needs for staff, manage workloads and case managers' schedules, evaluate case management staff, and work with EDSI staff to assure that contract performance goals are met.

          (c)     Case Management Direction for the program will be provided by a clinically trained, master's level social worker with at least 5 years of social work experience and 3 years of administrative/management experience. The Case Management director will oversee all aspects of the case management services and will coordinate case management activities and services with program needs, Philadelphia Workforce Development Corporation directives, and contract performance goals as determined by EDSI.

2. Staffing

Contractor will provide the West Philadelphia EARN Center with fifteen (15) FTE case managers, two (2) FTE case management supervisors, and one (1) FTE case management director, all of whom will meet the above-described staff requirements.

3. Client Levels

Contractor's case managers shall carry no more than 35 active client cases at any one time. Whether any particular case is deemed "active" shall be within discretion of EDSI in consultation with Case Management Director.

**Exhibit "B" to Contractor Agreement and Shared Space Agreement:**
**Budget**

# SHARED SPACE AGREEMENT

THIS SHARED SPACE AGREEMENT ("Agreement") dated _____, 2005, but effective as of January 1, 2005, between Educational Data Systems, Inc. a Michigan corporation (herein called "EDSI"), with an address of 15300 Commerce Drive North, Suite 200, Dearborn, MI 48120, and Caring People Alliance, a Pennsylvania non-profit corporation (herein called "CPA"), with an address of 1819 JFK Blvd., Suite 220, Philadelphia, PA 19103.

WHEREAS, EDSI is the recipient of certain grant funds from Philadelphia Work Force Development Corporation ("PWDC") to operate a program known as the Employment Advancement and Retention Center ("EARN" or the "Program"); and

WHEREAS, EDSI has subcontracted with CPA to provide space in connection with the Program at The West Philadelphia Community Center at 3512 Haverford Avenue, Philadelphia, PA 19104 (the "WPCC"), a property owned and operated by CPA;

NOW THEREFORE, in consideration of the mutual promises herein contained, EDSI and CPA, intending to be legally bound, agree as follows:

    1.    <u>The Premises</u>.

        A.    <u>Exclusive Use</u>. CPA hereby agrees to make available for use by EDSI, and EDSI agrees to use during the term hereof the areas described in subsections 1(i) through 1(xi), below (such areas, subject to the below restrictions, are referred to as the "Premises" in this Agreement):

        (i)   those certain eight (8) workstations located behind the main reception desk in the lobby area, as shown on that certain Floor Plan (the "Plan") attached hereto as Diagram 1, Area 1;

        (ii)   the back half of the cafeteria, for the period from 8:00 am to 5:00 pm Mondays through Fridays, except legal holidays, as shown on the Plan at Diagram 1, Area 2;

        (iii)   the area shown on the Plan as Diagram 2, Area 1;

        (iv)   the area shown on the Plan as Diagram 2, Area 2, for the period from 8:00 am to 3:00 pm Mondays through Fridays, except legal holidays; provided that EDSI may not site staff at said location on a permanent basis;

        (v)   manager's office, as shown on the Plan at Diagram 2, Area 4;

        (vi)   the area shown on the Plan as Diagram 2, Area 6;

        (vii)   case manager's space, as shown on the Plan as Diagram 2, Area 7;

        (viii)   case management director's space, as shown on the Plan as Diagram 2, Area 8;

(ix)  teen lounge, as shown on the Plan as Diagram 2, Area 10; provided, however, that CPA reserves the use thereof after 3:00 PM every day, and on legal holidays;

(x)  the middle of three rooms subdivided from the area as shown on the Plan as Diagram 2, Area 11, for additional case management office space;

(xi)  technology lab with office inside, for the period from 8:00 am to 4:00 pm Mondays through Fridays, except legal holidays, as shown on the Plan at Diagram 1, Area 4, subject to (a) use up to 4 hours per week during the aforementioned hours for CPA's senior program, (b) CPA's use of any open terminal at any time; (c) the office inside the technology lab is CPA's exclusive space, not to be used by EDSI at any time, and (d) all technology equipment in the lab will be maintained exclusively by CPA; EDSI agrees to leave as many working computer stations in the lab as CPA maintained in the lab prior to EARN Center renovations.

(xii)  the area shown on the Plan as Diagram 2, Area 3; and

(xiii)  the area shown on the Plan as Diagram 2, Area 5.

B.  Non-Exclusive Common Areas.  In addition to the exclusive use of the Premises, EDSI shall also be permitted to use, on a non-exclusive basis and in coordination with the CPA's use for its various programs, the following common areas (the "Common Areas"):

(i)  the waiting and reception area of the lobby (as shown on the Plan at Diagram 1, Area 1);

(ii)  the conference room, by reservation through CPA's office staff on a first-come, first-served basis (as shown on the Plan at Diagram 1, Area 3);

(iii) the conference room, by reservation through CPA's office staff on a first-come, first-served basis, as shown on the Plan at Diagram 2, Area 9; subject, however, to CPA's reserved use after 4:00 pm every day;

(iv)  upstairs hallway space for the storage of file cabinets for the EARN Program;

(v)  designated bathroom, other half of cafeteria for breakfast and lunch. Individuals with mobility issues may use a small handicap-only elevator in the building.

Shared Space Agreement Final

C.    Other Areas.

   (i) The area shown on the Plan at Diagram 1, Area 5 may be built out with EARN Funds to accommodate CPA staff from non-EARN Center programs who have been displaced by the EDSI's EARN Center case management consultant. Displacement costs have been incorporated into the approved Budget. EDSI shall have no use of this area.

   (ii) Other areas at the WPCC Premises are not included in this Agreement but may be made available to EDSI at the sole discretion of CPA.

  2.    Agreement Term.  The Agreement shall be for a term from (i) January 1, 2005 through June 30, 2006 ("the term"). The Agreement will expire of its own accord on the last day of said term, without either party having to provide notice of such termination. Notwithstanding anything to the contrary contained herein or in that certain Contractor Agreement between CPA and EDSI dated as of even date herewith, CPA reserves the right to terminate this Agreement if said Contractor Agreement is terminated. Such termination shall be effective immediately upon notice to EDSI.

  3.    Use.
   A.    Restricted Use. EDSI will be permitted to use the Premises and Common Areas solely for the EARN Program and for no other purpose.

   B.    Health and Safety.  WPCC is a comprehensive community center that has many other users and functions, other than the EARN Center. The Center Director or other designee of CPA is charged with the health and safety of all users and is the final authority with respect to spaces and users. The Center Director has the authority to evict or refuse entry to any person when in the Center's Director's judgment, that person poses a threat to center facilities or property or to the health or safety of center users. The Center Director also has the authority to cancel any and all activities for weather or other emergencies and has the authority to order the immediate vacating of the premises in emergency or potential emergency situations. Further, CPA reserves the right to regulate all manner of use of the WPCC by EDSI and others. Tenant shall abide by CPA's code of conduct including dress, use of proper language, and the avoidance of hostile, angry or threatening behavior. CPA reserves the right to evict or ban any person in any program, either client or staff, for violation of these rules.

   C.    Background Checks.  Prior to commencement of work at the WPCC Premises by EDSI's employees and contractors, such employees and contractors shall provide CPA with original up-to-date (less than 1 year old) Pennsylvania child abuse clearances and Pennsylvania Criminal background checks, which shall be acceptable to CPA in its sole discretion. CPA reserves the right to require FBI background checks for all out-of-state workers or those residing in Pennsylvania for less than one year. CPA reserves the right to ban any individual from the WPCC Premises if the aforementioned documents are not provided to CPA as aforesaid. It is the responsibility of the individual or employing agency to obtain these background checks and provide them to CPA. The foregoing requirements shall be strictly enforced.

- 3 -

5.    Fees. In consideration for use of the space, EDSI agrees to pay CPA the following fees in equal monthly installments. The monthly installments are charged to EDSI in monthly invoices per the Contractor Agreement between EDSI and CPA. The monthly base fee shall be Three Thousand Ten and 40/100 Dollars ($3,010.40), plus monthly utilities in the additional amount of Five Thousand Eight Hundred Thirty-Three and 30/100 Dollars ($5,833.30). The total monthly fees are Eight Thousand Eight Hundred Forty-Three and 70/100 Dollars ($8,843.70), such fees having been incorporated into the budget agreed to by EDSI and CPA and made part of their Contractor's Agreement.

6.    Assignment and Subletting. EDSI shall not assign this Agreement, or sub-let or grant any license to use the Premises or any part thereof without the prior written consent of CPA. An assignment, sub-letting or license without the prior written consent of CPA or an assignment or sub-letting by operation of law shall be absolutely null and void and shall, at CPA's option, terminate this Agreement.

7.    Maintenance and Repairs; Improvements.

A.    The EDSI is responsible for all maintenance and repairs within any areas that are caused by EDSI's acts or omissions. The provisions of this section 7 A shall survive termination of the Contractor Agreement and Shared Space Agreement.

B.    The EDSI shall not be permitted to make any alterations or improvements to the Premises unless approved by CPA in writing, which approval may be withheld by CPA within its sole discretion.

C.    All improvements to the Premises and elsewhere at the WPCC, including dividing walls, carpeting, window shades, workstations, reception areas, and installed furniture purchased by CPA through the Contractor Agreement and this Agreement shall be and remain at all times the sole and exclusive property of CPA, except where the EARN Center contract between EDSI and PWDC requires the return of such property. In these instances, EDSI agrees to make a good-faith petition to PWDC on behalf of CPA to retain said property at the WPCC for the continued benefit of the Mantua community through CPA's charitable mission. The provisions of this section 6 C shall survive termination of the Contractor Agreement and Shared Space Agreement.

8.    Indemnification. EDSI is liable for, and shall indemnify, defend and save harmless CPA from all fines, suits, judgments, procedures, claims, actions, damages and liabilities of any kind (including attorneys' fees, court costs, expert and consultant fees and expenses) arising out of or in any way connected with the use of the Premises and Common Areas or elsewhere in the WPCC for the EARN Program or arising out of the generation, use, storage or handling by the EDSI or its invitees, or any spills, releases or discharges by the EDSI of, hazardous materials at the WPCC. The provisions of this section 8 shall survive termination of the Contractor Agreement and Shared Space Agreement.

- 4 -

9. <u>As-Is Condition</u>. EDSI acknowledges that EDSI has inspected the Premises and WPCC and is familiar with the present condition of the WPCC. EDSI agrees (a) that neither CPA, nor any agent of CPA, has made and does not make, herein or otherwise, any representation or warranty as to the condition or size of all or any portion of the improvements or equipment located therein, or of the Land; (b) that EDSI is relying solely on EDSI's own examination and investigation as to all of the same; and (c) that CPA has made no warranty express or implied concerning the habitability, use or fitness for any particular purpose of the premises or any improvements or equipment located thereon, or the title thereto, or of any zoning or other legal requirements applicable to the Premises and WPCC. The premises are being made available to EDSI strictly in an "as-is" condition. As the EDSI is using the premises in "as-is" condition, CPA will not be responsible for any damage to any of EDSI's personal property/equipment at the premises, including but not limited to any damage from leaks in the roof, unless the damage is caused by the failure of CPA to promptly repair a leak.

10. <u>Surrender of Premises</u>. Upon the expiration of the term hereof, EDSI shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof and damages by the elements excepted.

11. <u>Hold Over</u>. If EDSI remains in possession of the Premises with the consent of CPA after the natural expiration of this Agreement, and without a signed Agreement for a renewal term in effect, a new Shared Space Agreement from month-to-month shall be created between EDSI and CPA which shall be subject to all of the terms and conditions hereof except that the fee for use is due and owing at FIVE THOUSAND 00/100 DOLLARS ($5,000.00) per month plus monthly utilities in the additional amount of SIX THOUSAND, FIVE HUNDRED 00/100 Dollars ($6,500.00) for a total monthly payment of ELEVEN THOUSAND FIVE HUNDRED 00/100 DOLLARS ($11,500.00). Such tenancy shall be terminable upon fifteen (15) days written notice served by either party.

12. <u>Default</u>. If EDSI fails to comply with any of the material provisions of this Agreement, other than the covenant to pay use fees and utilities, or of any present rules and regulations or any that may be hereafter prescribed by CPA, or materially fails to comply with any duties imposed on CPA by statute, within seven (7) days after delivery of written notice by CPA specifying the non-compliance and indicating the intention of CPA to terminate the Shared Space Agreement by reason thereof, CPA may terminate this Agreement

13. <u>Insurance</u>. At its expense, EDSI shall maintain and keep in effect throughout the Agreement term (i) insurance against claims for personal injury including death or property damage under a policy of general public liability insurance, with a combined single limit of not less than One Million Dollars ($1,000,000.00); (ii) all risk casualty insurance covering any and all of EDSI's personal property in the premises or elsewhere in the WPCC and all leasehold improvements and all risk casualty insurance covering all leasehold furniture, fixture and improvements, existing or installed in the

- 5 -

premises by EDSI; (iii) Comprehensive General Liability Insurance and, if applicable, Worker's Compensation Insurance covering EDSI's employees, contractors and agents working at the Premises. CPA shall be named as an additional insured on the insurance identified in this Section, and EDSI shall provide CPA with a certificate of such insurance so naming CPA as an additional insured prior to taking possession of the premises and as may be requested thereafter by CPA.

13. <u>Attorney's Fee</u>. Should it become necessary for CPA to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, EDSI agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

14. <u>Miscellaneous</u>.

A. This Agreement has been delivered in and shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

B. If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

C. The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

D. No indulgence, waiver, election or non-election by CPA under this Agreement shall affect EDSI's duties and liabilities hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written.

CARING PEOPLE ALLIANCE

By: _____

Name: _____Arlene F. Bell, Esq._____

Title: _____President and CEO_____

EDUCATIONAL DATA SYSTEMS, INC.

By: _____

Name: _____W. Robert Schnieders_____

       President

Title: _____

- 6 -

**Lease Addendum, Floor Plan
Diagrams 1-3**

## Budget                                         18-Month

**a. Personnel**

| Center Positions | NAME | |
|---|---|---|
| Director of Center Operation | Jerry Macdonald, Ph.D. | 28,834 |
| Center Director | Andre Ascalon | 33,000 |
| Administrative Assist/Sup | Vacant | 33,000 |
| Receptionist | Vacant | 49,875 |
| Maintenance | Vacant | 40,500 |
| Director of Technology Progi | William Butler | 19,350 |
| Tech Lab Instructor | Vacant | 9,938 |
| **Case Management Positioi** | | |
| Director of Case Manageme | Vacant | 58,125 |
| Case Manager Supervisors* | Vacant | 93,333 |
| Case Managers** | Vacant | 484,693 |
| **Administrative Positions** | | |
| Executive Director | Arlene F. Bell, Esq. | 19,800 |
| Deputy Executive Director/C | Donald H. Kandel | 17,738 |
| Accounts R/P | Cheryl Devose | 12,000 |
| Payroll | Darnell Jones | 11,100 |
| Controller | William Hastings | 22,313 |
| | | |
| Subtotal | | 933,598 |

**b. FRINGE BENEFITS**

| | | |
|---|---|---|
| FICA (Social Security) | .062 x total gross up to $80,4 | 57,883 |
| Medicare | .0145 x total gross | 13,537 |
| Workers Compensation | .032 x total gross | 29,875 |
| PA Unemployment Comp. | .062 1st $8,000/employee | 24,071 |
| Health and Dental | @$150 | 54,208 |
| Life Insurance | .019 x gross | 17,738 |
| Retirement(of eligible salarie | 0.10% | 88,692 |
| | | |
| Subtotal | | 286,004 |

**c. TRAVEL (Out of Town)**

| | |
|---|---|
| Staff Development-travel/conf/mtgs | 5000 |

**d. EQUIPMENT**

| | | |
|---|---|---|
| C-M Photocopier | $500 / month | 9000 |
| | | |
| Subtotal | | 9,000 |

### e. SUPPLIES

| | |
|---|---:|
| Postage | 3000 |
| Office Supplies (per FTE) | 12000 |
| Training Supplies (VCR, TV, videos, books, curriculum m: | 5000 |
| IBM Compatible laptop/LCD projector combination, softwa | 7,000 |
| Office furn: desk, chair, filing cabinet, bookshelves, storaç | 16,000 |
| Laptop Computers | 20,000 |
| Wireless Network | 5,000 |
| | |
| Subtotal | 68,000 |

### f. CONTRACTUAL

| | |
|---|---:|
| Case Management Consultants | 0 |
| Consultant Travel | 0 |
| | |
| Subtotal | 0 |

### g. Construction

| | |
|---|---:|
| | 198,810 |

### h. OTHER

| | |
|---|---:|
| Insurance | **11,603** |
| Telephone/Communications | **11,250** |
| Equiptment Repair/Rental | **15,000** |
| Custodial Supplies | 18,750 |
| Staff travel (local) 2 staff x .30/mi x 50 miles/wk x 36 wks | 2,160 |
| Rent Commnity Center | 54,188 |
| Utilities | 105,000 |
| | |
| Subtotal (minus lines 64-66) | 217,950 |

### i. Total Direct Charges

| | |
|---|---:|
| | 1,718,362 |

### k. TOTALS

| | |
|---|---:|
| | 1,718,362 |

### Total billed to EDSI

| | |
|---|---:|
| | **1,680,509** |

5/58

35th STREET

Main Entrance

BRANDYWINE STREET

36th STREET

WEST PHILADELPHIA CENTER
GAME PREVENTION ASSOCIATION

FIRST LEVEL ①

Diagram 1



SECOND LEVEL ①

WEST PHILADELPHIA CENTER
CRIME PREVENTION ASSOCIATION

Diagram 2



Diagram 3

Entrance

Haverford Ave

## <u>VERIFICATION</u>

I, ARLENE BELL, hereby verify that I am the President and Chief Executive Officer of Caring People Alliance and I have the authority to make this verification on its behalf. The facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

Dated: 2 - 27 - 07

_____
ARLENE BELL

**April 1, 2005**
**Caring People Alliance**

| Qty | Furniture Specifications | Extended Sell Price |
|---|---|---|
| | | |
| | **TAG 1: 1st Floor Private Office** | |
| 1 | 30"D x 66"W Single Pedestal Desk - Box/Box/File - Left | 474.81 |
| | | - |
| 1 | 20"D x 48"W Return w/Pedestal - File/File - Right FINISH: TIGER MAPLE (TMP)_____ | 358.55 |
| | | - |
| | | - |
| 1 | Articulating Keyboard Tray | 166.50 |
| 1 | TR2 - Swival Tilt Task Chair w/Adjustable Arms GR. #3 FABRIC: FACTOR - COLOR: SKY_____ | 234.67 |
| | | - |
| | | - |
| 2 | Achieve - Guest Chair w/Arms FRAME: BLACK _____ GR. #3 FABRIC: FACTOR - COLOR: SKY_____ | 378.67 |
| | | - |
| | **Subtotal** | **1,613.20** |
| | | |
| | **TAG 2: Andra's Office** | |
| 1 | 36"D x 72"W Double Pedestal Desk - Box/Box/File and File/File w/Locks | 740.26 |
| | | - |
| 1 | 24"D x 72"W Kneespace Credenza w/Box/Box/File on Right and File/File on Left w/Locks | 644.57 |
| | | - |
| 1 | 12"D x 36"W x 65"H Bookcase w/One Fixed and Two Adjustable Shelves FINISH: TIGER MAPLE (TMP)_____ | 323.06 |
| | | - |
| | | - |
| 1 | Articulating Keyboard Tray | 166.50 |
| 1 | Salerno - High Back Tilter w/Curved Molded Arms LEATHER/MOCK LEATHER: COLOR: GR. 7 454/554 NAVY _____ | 391.48 |
| | | - |
| | | - |